# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD M. BERRY, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-554-JED-FHM |
| | ) |
| RETIREMENT BENEFIT PLAN OF | ) |
| AMERICAN AIRLINES, INC. FOR | ) |
| EMPLOYEES REPRESENTED BY THE | ) |
| TRANSPORT WORKERS UNION OF | ) |
| AMERICA, AFL-CIO, an ERISA plan, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Donald M. Berry brings this claim under the Employment Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to challenge Defendant's calculation of his retirement benefit. (Doc. 2). Plaintiff claims that Defendant inappropriately refused to credit the years from Plaintiff's first two terms of employment with American Airlines, Inc. (Doc. 31 at 1-2). After a thorough review of the Administrative Record, the Court has determined that Defendant's denial of Plaintiff's claim should be affirmed.

**I.    Background**

Plaintiff's employment history with American Airlines, Inc., included three separate terms of employment:

1.    April 3, 1967, through July 14, 1972;

2.    January 8, 1973, through December 30, 1977; and

3.    September 19, 1983, through January 30, 2004.

(Doc. 31 at 1; Rec. 20). During Plaintiff's first term of employment, the retirement plan in effect was the plan effective January 1, 1964, as amended on May 1, 1967 (the "1967 Plan"). The plan

in effect during Plaintiff's second term with American Airlines was the plan as amended and restated effective January 1, 1976 (the "1976 Plan"). The retirement plan as amended and restated effective January 1, 2003 (the "2003 Plan") was in effect when Plaintiff retired in 2004.

Upon retirement, Plaintiff applied for and received a retirement benefit based only on his third term of employment. Plaintiff then made a claim for additional years of service to be included in his benefit, which was initially denied and later denied on appeal to the company's Pension Benefits Administration Committee (the "Committee"). (Rec. 7, 20-23).

## II. Objections to the Administrative Record

The Court will first address Plaintiff's objections to the Administrative Record (the "Record"). Many of these objections were resolved by the Court in its March 22, 2016 Order (Doc. 33 at 4-6), but a few additional objections have not yet been addressed.

First of all, Plaintiff takes issue with the fact that the version of the 1976 Plan included in the Record appears to be dated "March 1981." (*See* Rec. at 252). Plaintiff contends that this version of the Plan includes amendments made after Plaintiff resigned in 1977. (Doc. 31 at 4). However, it appears that changes made to the Plan were given specific "effective dates" that clarify which provisions came into effect after Plaintiff's resignation. The Court finds that additional discovery on this issue is unnecessary, as the Court will consider these "effective dates" in evaluating the reasonableness of Defendant's decision.

Plaintiff further argues that the Record "does not indicate what benefit Plaintiff is getting, nor how it was calculated." (Doc. 31 at 4). The Court finds this objection to be meritless. In fact, the Record contains many pages of detailed information showing how Defendant calculated Plaintiff's retirement benefit. (*See, e.g.*, Rec. 183-84, 187-193, 195-205, 208-210).

Plaintiff makes two arguments that the Court will address in its discussion of the appropriate standard of review: first, that his denial letter from Defendant was insufficient (Doc. 31 at 4) and, second, that the Record should include documentation regarding the authority of the decision maker in his administrative appeal (Doc. 34 at 1-2). The Court will take up these arguments in Section III, *supra*.

Lastly, Plaintiff claims in his Reply Brief that he needs discovery to determine whether the decision maker's pay was tied to her decision in this case and whether the decision maker acted in good faith. (Doc. 34 at 2-3). The Court has already determined that discovery is inappropriate in this case. (Doc. 33 at 6). Even assuming a conflict of interest, the Court finds that "the substantive evidence supporting denial of [this] claim is so one-sided that the result would not change even giving full weight to the alleged conflict." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010).

## III. Additional Service Years

It is undisputed that Plaintiff elected not to participate in the retirement plans in effect during his first two terms of employment with American Airlines. (*See* Doc. 31 at 5-6). In fact, when he refused membership at the beginning of his second term of employment, he wrote, "I do not expect the world to be in existence in the year 2006, my retirement date. If it is, I do not expect to be here." (Rec. 68). Defendant, in calculating Plaintiff's retirement benefit, concluded that his refusal to participate meant that he did not accrue any Credited Service or Vesting Service during those first two terms of employment. (Doc. 32 at 5; Rec. 23).

### A. Standard of Review

"Principles of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S.

3

105, 111 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 115 (1989)). Where a plan "grants discretionary authority to the administrator or fiduciary," the arbitrary and capricious standard of review is appropriate. *Nance v. Sun Life Assur. Co. of Canada,* 294 F.3d 1263, 1266 (10th Cir. 2002). Here, the retirement plan in effect at the time of Plaintiff's retirement states that the Committee has the power "to exercise discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." (Rec. 378). Thus, "the exercise of that authority will be set aside only if it is arbitrary or capricious." *Nance*, 294 F.3d at 1266.

The arbitrary and capricious standard is very deferential. "When reviewing under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one." *Nance*, 294 F.3d at 1269 (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)). Instead, the Administrator's decision "will be upheld unless it is not grounded in *any* reasonable basis." *Id*. (quoting *Kimber*, 196 F.3d at 1098).

Plaintiff argues that he is entitled to *de novo* review "since Defendant failed to analyze its denial in terms of the applicable plan and cite to the pertinent provisions." (Doc. 31 at 11). He points to 29 C.F.R. 2560.503-1(j)(2), which requires a notification of an adverse benefit determination to make "[r]eference to the specific plan provisions on which the benefit determination is based."

In reviewing the Defendant's denial letter, it is clear to the Court that the letter cites irrelevant plan provisions and fails to reference relevant ones. Yet, the cases cited by Plaintiff do not support his proposition that a failure to reference specific plan provisions in a letter of denial would entitle him to *de novo* review. In *Kellogg v. Metropolitan Life Insurance Co.*, the Court applied a *de novo* standard of review when the insurer completely failed to issue a decision on the plaintiff's appeal. 549 F.3d 818, 826 (10th Cir. 2008). Similarly, in *Gilbertson v. Allied Signal,*

4

*Inc.*, the Court applied a *de novo* standard of review when the plaintiff's appeal was "deemed denied" after the plan administrator failed to issue a decision before the applicable deadline. 328 F.3d 625, 636 (10th Cir. 2003). The Tenth Circuit has also applied a *de novo* standard of review when a plan administrator made a late decision on a claim. *See, e.g., LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798 (10th Cir. 2010) (no decision until 170 days after claimant sought review); *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1316 (10th Cir. 2009) (benefit determination and appeal determination made months after the respective deadlines). In this case, though the denial letter was lacking in citations to the pertinent plan provisions, the Court does not find that this rises to the level of a complete failure to issue a timely decision.

Furthermore, the Seventh Circuit has explained that if a plan administrator's explanation is sufficient to enable the claimant "to formulate his further challenge to the denial," nothing more is required—"as that is the purpose of requiring a statement of the plan administrator's reason for denying the benefits sought." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996). Defendant's denial letter includes the key basis of its denial, even if it is not well-cited:

> "Since you refused membership and did not make contributions to the Plan prior to your resignation in 1977, you did not have any Vesting Service or Credited Service in the Plan on the first day of your Break in Service." (Rec. 23).

This was clearly sufficient for Plaintiff to mount his challenge to the decision, as he specifically argues that he <u>did</u> accrue Credited Service prior to his resignation in 1977, pursuant to Section 4.2(g) of the 1976 Plan. (Doc. 31 at 8-9). As such, the Court finds that the denial letter's failure to reference the relevant plan provisions does not warrant altering the standard of review in this case.

In Plaintiff's Reply Brief, he claims the Record should include information on why the Committee's Recording Secretary had the authority to make the appeals decision in his case, or, if the Committee itself made the decision, he argues the Record should contain the meeting agenda and minutes. (Doc. 34 at 1-2). Plaintiff seems to be suggesting that there may have been a procedural irregularity in how the appeal determination was made.

The Tenth Circuit has held that procedural irregularities can trigger *de novo* review "if the benefit-determination process did not substantially comply with ERISA regulations." *Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141, 1152. As noted above, the Tenth Circuit has applied *de novo* review when plan administrators completely failed to make a decision and when such decisions were unduly delayed. In contrast, Plaintiff in this case received a timely notification of his appeal determination from a representative of the Committee charged with administrating the plan. (*See* Rec. 2-3, 20-24, 391). The Court finds that any irregularity in Defendant's handling of Plaintiff's appeal was inconsequential and would not entitle Plaintiff to a heightened standard of review. *See Gilbertson*, 328 F.3d at 635 ("[I]n the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to *de novo* review.").

**B.      The Basis of Denial**

Defendant's denial letter takes an admittedly confusing route to its ultimate conclusion that Plaintiff did not begin accruing Credited Service until his third term of employment with American Airlines, Inc. (*See* Rec. 23). The denial letter first includes a provision on membership from the 1967 Plan. (Rec. 21). This provision outlines the eligibility requirements for becoming a member of the Plan, but it does not reference the accrual of Credited Service. The letter then provides an excerpt from the 1976 Plan regarding Vesting Service, which states that "[a] Member shall not be

credited with a year of Vesting Service for any calendar year prior to 1978 during all or a part of which he or she was required to but did not make Employee Contributions . . . ." (Rec. 22, 265). Notably, Plaintiff's Vesting Service is not in dispute in this case. Vesting Service is used to determine whether an employee has a right to receive a benefit at all, whereas Credited Service determines the amount of his retirement benefit. (Doc. 31 at 7; Rec. 21).

The letter goes on to state that since Plaintiff "refused membership in the Plan prior to [his] resignation in 1977, [he] did not make any employee contributions to the Plan in those years" and, therefore, "did not receive any Vesting Service during that time." (Rec. 22). The letter then quotes the Break in Service provision from the 1976 Plan:

> If an individual is credited with fewer than five years of Vesting Service (ten years in the case of an individual whose employment with the Company terminated prior to February 18, 1978) on the first day of a Break in Service which includes a number of consecutive years at least equal to the number of such individual's years of Vesting Service as of the first day of such Break in Service, such individual shall forfeit all of such years of Vesting Service and, if a Member, all of the Credited Service with which he or she was credited on the first day of such Break in Service.

(Rec. 22, 268). Defendant's reasoning appears to be as follows: because Plaintiff had accrued no Vesting Service on the first day of his Break in Service in 1977 and his Break in Service lasted approximately six consecutive years, the length of his Break in Service exceeded his (zero) years of Vesting Service and any Credited Service was forfeited. Yet, the letter also claims that since Plaintiff refused membership in the plans and did not make contributions, he did not have any Credited Service on the first day of his Break in Service. (Rec. 23). In other words, there was nothing to forfeit. This is an important point because ERISA prevents plans from denying credit, for accrual of benefit purposes, for pre-ERISA service time accrued prior to a break in service. *DiGiacomo v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 420 F.3d 220, 225 (3rd Cir. 2005).

7

At the heart of Defendant's denial, then, is not forfeiture of Credited Service; instead, it is Defendant's conclusion that Plaintiff's failure to participate in the 1967 and 1976 Plans resulted in him not accruing Credited Service in the first place. This conclusion is well supported by the Record and should be affirmed.

Article IV ("Credited Service") of the 1967 Plan unambiguously conveys that participation in the Plan was required to accrue Credited Service at that time. This provision states:

> Every Member shall be credited with a number of years and completed calendar months of Service rendered <u>since he first became a participant in The Plan</u> and up to the last day of the month preceding his normal retirement date <u>during any period or periods in respect to which contributions were made by the Company and by him</u> or for his account in accordance with The Plan and not withdrawn.

(Rec. 511) (emphasis added). Section 4.2 of the 1976 Plan takes a similar approach:

> A Member's Credited Service shall be a number of years and months (the latter expressed as fractions of a year) equal to the sum of (1) the number of years and months, if any, constituting such Member's Credited Service accrued for periods prior to the Effective Date [January 1, 1976] under the Prior Plan . . . plus (2) the number of years and months constituting the period or periods of such Member's employment as an Employee <u>while a Member of the Plan</u>, beginning on the Effective Date . . . .

(Rec. 266) (emphasis added). One could reasonably apply these provisions and find that Plaintiff's total Credited Service when he resigned in 1977 was the sum of zero and zero—that he had not accrued any Credited Service time under the prior 1967 Plan and that he had not accrued any such time under the 1976 Plan.

Plaintiff cites Section 4.3(g) in support of his proposition that his first two terms with American Airlines should count toward his Credited Service:

> Notwithstanding the foregoing, effective March 1, 1980, a Member's Credited Service shall be a number of years and months . . . equal to the number of years and months constituting the period or periods of such Member's employment as an Employee while meeting all eligibility requirements to be a Member of the Plan, Prior Plan or Retirement Benefit Plan of 1955.

8

(Rec. 268). However, this section specifically became effective in March 1980—after Plaintiff had resigned from his second term of employment. Given this later effective date, the Court finds that it was not arbitrary and capricious for the Defendant to refuse to apply this provision to Plaintiff.

The Court finds that Defendant's conclusion regarding Plaintiff's accrual of Credited Service has a reasonable basis in the Record. Even if a *de novo* standard of review were appropriate in this case, the Court would come to the same conclusion based on the plain language of the 1967 and 1976 Plans referenced above.

**IT IS THEREFORE ORDERED** that Defendant's final decision denying Plaintiff's claim for additional years of Credited Service is hereby **affirmed**. A separate judgement is filed herewith.

**ORDERED** this 7th day of November, 2017.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE